PINE KNOLL ASSOCIATION, INC., Plaintiff v. MARVIN G. CARDON, Defendant

No. COA96-347

(Filed 6 May 1997)

### 1. Trespass § 46 (NCI4th)— unauthorized entry—insufficient forecast of evidence

Plaintiff property owners association failed to establish the element of its trespass claim that defendant's entry onto plaintiff's seawall was unauthorized where its forecast of evidence showed that defendant was a member of the association and failed to show that defendant, as one of the association members, was not authorized to use the seawall.

**Am Jur 2d, Associations and Clubs §§ 23, 27, 28; Condominiums and Co-Operative Apartments § 33; Cooperative Associations § 14; Easements and Licenses in Real Property § 46; Trespass §§ 27-46; Waters § 277.**

### 2. Waters and Watercourses § 57 (NCI4th)— navigable canal—riparian rights

Both plaintiff property owners association and defendant landowner are owners of land with riparian rights where their lands were on a navigable canal; former landowners were a common source of title; plaintiff offered a deed from the former landowners conveying "all of the right, title and interest" to various common facilities; defendant offered deeds showing title by direct chain from the former landowners; defendant's deed conveyed a lot with "all privileges and appurtenances thereto" in fee simple; and any title the former landowners had, including riparian rights, passed to both plaintiff and defendant.

**Am Jur 2d, Boats and Boating § 24; Canals §§ 7, 16; Waters §§ 23, 51, 54, 269-280.**

**Allocation of water space among lakefront owners, in absence of agreement or specification. 14 ALR4th 1028.**

PINE KNOLL ASSN. v. CARDON

[126 N.C. App. 155 (1997)]

**3. Waters and Watercourses § 57 (NCI4th)— riparian rights— right angles—reasonable use test—question of fact**

The "reasonable use" test should be used to determine the proper allocation of water space between abutting riparian owners where the configuration of the shoreline is essentially a right angle, and the question of whether a use of water is a reasonable use in view of the rights of other riparian owners is a question of fact. Therefore, a genuine issue of material fact existed as to whether defendant, by mooring his boats parallel to plaintiff's seawall, interfered with plaintiff's riparian rights.

**Am Jur 2d, Boats and Boating § 24; Canals § 7; Waters §§ 177, 226, 263, 338, 339, 269-280.**

**Allocation of water space among lakefront owners, in absence of agreement or specification. 14 ALR4th 1028.**

**4. Appeal and Error § 175 (NCI4th)—restrictive covenants— voluntary dismissal—counterclaim—mootness**

Since plaintiff voluntarily dismissed its claim for defendant's alleged violation of restrictive covenants and the trial court granted no relief upon defendant's counterclaim on this issue, the plaintiff's assignment of error regarding the issue of restrictive covenant violations was moot.

**Am Jur 2d, Appellate Review §§ 872, 874, 876, 877.**

**Constructions, as to terms and conditions, of state statute or rule providing for voluntary dismissal without prejudice upon such terms and conditions as state court deems proper. 34 ALR4th 778.**

**Right to voluntary dismissal of civil action as affected by opponent's motion for summary judgment, judgment on the pleadings, or directed verdict. 36 ALR3d 1113.**

Appeal by plaintiff from order entered 16 November 1995 by Judge W. Russell Duke, Jr., in Carteret County Superior Court. Heard in the Court of Appeals 4 December 1996.

*Kirkman & Whitford, P.A., by Neil B. Whitford, for plaintiff-appellant.*

*Wheatly, Wheatly, Nobles & Weeks, P.A., by C.R. Wheatly, Jr., for defendant-appellee.*

MARTIN, John C., Judge.

Plaintiff Pine Knoll Shores Association, an owners association for various Pine Knoll Shores subdivision properties located on the Bogue Banks barrier island, brought this action seeking damages and injunctive relief against defendant Marvin G. Cardon. Plaintiff alleged that defendant had violated its riparian rights, violated restrictive covenants, and trespassed upon its property. Defendant answered denying plaintiff's claim and asserting a counterclaim alleging that plaintiff was in violation of restrictive covenants.

The dispute arises upon the following factual background: Plaintiff and defendant own adjoining canal front properties on the "dead end" canal of Davis Landing Canal, which is navigable by pleasure boats. Plaintiff's tract of land, referred to as "Davis Landing Park," has water frontage along the canal's end. Davis Landing Park and Davis Canal are common property of plaintiff and its members. Defendant's lot is immediately to the west of Davis Landing Park with a small protrusion of its boundary located on the western bank of Davis Landing Canal near the southwest corner of the park. A seawall runs approximately east-west along the park's canal frontage and approximately north-south along defendant's canal frontage.

The properties within Pine Knoll Shores are subject to a Declaration of Covenants and Restrictions, recorded in January 1971 in Book 324, Page 418, Carteret County Registry. On 13 June 1981, members of plaintiff purported to adopt and record an amendment to the restrictive covenants in Book 460, Page 198, Carteret County Registry, which provides, in pertinent part:

ARTICLE 5

4. . . . [N]o fence, barricade or obstruction may be erected or placed in extensions of the property lines abutting the canals and Bogue Sound which would prevent ingress or egress along the waterfront side of said lots to pedestrians or others lawfully thereon.

Plaintiff maintains a pier which is thirty-five feet in length and three and one-half feet wide, extending southwardly from the center of Davis Landing Park's canal frontage, and an adjacent ramp to the east of the dock for launching small boats. Defendant maintains a dock along his 26.1 feet of canal frontage. Defendant moors his two boats, of approximately thirty feet in length, perpendicular to his dock and parallel to plaintiff's sea wall.

PINE KNOLL ASSN. v. CARDON

[126 N.C. App. 155 (1997)]

Plaintiff moved for partial summary judgment on the issue of defendant's interference with its riparian rights; and defendant moved for summary judgment dismissing plaintiff's action. At the commencement of the summary judgment hearing, plaintiff sought to voluntarily dismiss its claim for alleged violation of restrictive covenants. The trial court denied plaintiff's motion for summary judgment, granted defendant's motion for summary judgment and dismissed plaintiff's action. Plaintiff appeals.

---

The issue on appeal is whether the trial court erred in granting defendant's motion for summary judgment. We affirm in part, reverse in part, and remand.

In addressing a motion for summary judgment, the trial court is required to view the pleadings, affidavits and discovery materials available in the light most favorable to the non-moving party to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56 (1990); *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 414 S.E.2d 339 (1992). Summary judgment is proper where the moving party can establish that an essential element of the opposing party's claim does not exist, or that the opposing party cannot produce evidence to support an essential element. *Id.* Summary judgment is an appropriate procedure in a declaratory judgment action. *Montgomery v. Hinton*, 45 N.C. App. 271, 262 S.E.2d 697 (1980).

I.

[1] We first consider plaintiff's claim for trespass. In order to establish a claim for trespass to real property, plaintiff was required to forecast evidence of the following elements: (1) possession of the property by the plaintiff when the alleged trespass was committed; (2) an unauthorized entry by the defendant; and (3) damage to the plaintiff from the trespass. *Lee v. Greene*, 114 N.C. App. 580, 442 S.E.2d 547 (1994). The pleadings, affidavits, and answers to interrogatories before the trial court show that owners of property within Pine Knoll Shores are members of plaintiff Association and that members have the right to use "common properties" such as Davis Landing Canal and Davis Landing Park. Likewise, the evidence before the trial court clearly establishes that defendant is a property owner within Pine Knoll Shores, and therefore is a member of plaintiff Association. Plaintiff did not forecast evidence that defendant, as one of its members, is not authorized to use the seawall. Thus, the second element

of plaintiff's claim, *i.e.*, unauthorized entry onto plaintiff's seawall, is nonexistent and summary judgment for defendant was proper. Accordingly, the trial court's order granting summary judgment in favor of defendant with respect to the trespass claim is affirmed.

II.

[2] We next consider plaintiff's claim for interference with its riparian rights. Plaintiff contends the trial court erred in granting defendant's motion for summary judgment because there exists a genuine issue of material fact as to whether defendant, by mooring his boats parallel to plaintiff's seawall, interfered with plaintiff's riparian rights. Defendant argues that plaintiff did not retain riparian rights to the Davis Landing Park. Therefore, we must first determine whether each party owns riparian land, and if so, what is the extent of each party's riparian rights.

Riparian rights are vested property rights that arise out of ownership of land bounded or traversed by navigable water. *In re Protest of Mason*, 78 N.C. App. 16, 337 S.E.2d 99 (1985), *disc. review denied*, 315 N.C. 588, 341 S.E.2d 27 (1986). A riparian owner has "a qualified property in the water frontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being the right of access over an extension of their waterfronts to navigable water, and the right to construct wharfs, piers, or landings . . . ." *Bond v. Wool*, 107 N.C. 139, 148, 12 S.E. 281, 284 (1890).

Both plaintiff and defendant admit that lot one and Davis Landing Park are bounded by a navigable waterway, Davis Landing Canal. The record indicates that the Roosevelts owned property known as "Pine Knoll Shores Extension," and were the common source of title to defendant's lot one and plaintiff's Davis Landing Park. Plaintiff offered a deed, granted by the Roosevelts, dated 23 March 1977 recorded in Book 396, Page 43, Carteret County Registry conveying "all of the right, title and interest" to various common facilities including "Davis Landing and the land area underlying, and the Park adjacent thereto." Defendant offered many deeds showing that he acquired title by direct chain from the Roosevelts. Defendant was granted a deed in July of 1989 recorded in Book 614, Page 196, Carteret County Registry, conveying lot 1 with "all privileges and appurtenances thereto belonging to the Grantee in fee simple." Therefore, any such title that the Roosevelts had, including riparian rights, passed to and vested in plaintiff and defendant. Accordingly,

the record indicates that both plaintiff and defendant are owners of land with riparian rights.

**[3]** The next issue is whether the trial court correctly determined the extent of the parties' riparian rights. In *Bond v. Wool*, 107 N.C. 139, 12 S.E. 281 (1890), our Supreme court defined riparian rights where the boundary lines of property were reasonably perpendicular to the shoreline and the navigable water was parallel with the shoreline by extending straight lines of the sidelines of the lands into the water. In *O'Neal v. Rollinson*, 212 N.C. 83, 192 S.E.2d 688 (1937), the court held that where the shore line is substantially straight, the riparian rights of adjoining landowners along a navigable stream are to be determined, not by extending the side property lines in a straight line to the channel, but by drawing lines from the end of the side property lines perpendicular to the shore line to the channel. Similarly, this Court in *In re Protest of Mason*, 78 N.C. App. 16, 337 S.E.2d 99 (1985), *disc. review denied*, 315 N.C. 588, 341 S.E.2d 27 (1986), held that the zone of riparian access is determined by drawing a line along the channel in front of the properties, then drawing a line perpendicular to the line of the channel so that it intersects with the shore at the point the upland property line meets the water's edge. The general rules for apportionment of riparian rights that our Supreme Court has fashioned cannot be strictly applied in the present case because irregular shore lines are involved, and if applied, defendant and plaintiff would not be treated equitably. In determining riparian rights where the shoreline is angled, as it is in this case, some jurisdictions have used the "angle bisection formula," *see Randall v. Ganz*, 537 P.2d 65 (1975), other jurisdictions have used the "reasonable use" delineation. *See Heston v. Ousler*, 398 A.2d 536 (1979).

In the absence of any controlling authority concerning the issue of proper allocation of water space between abutting riparian owners where the configuration of the shoreline is essentially a right angle, as here, we believe the "reasonable use" test to be the most equitable method to determine the owner's rights. In applying the "reasonable use" test, the owners' use of the waters adjacent to their property is governed by "a rule of reasonableness, and must be restricted so as not to interfere with the correlative rights of other littoral owners." *Heston*, 398 A.2d at 538. North Carolina has recognized the doctrine of "reasonable use" where water passes through the property. *See Durham v. Cotton Mills*, 141 N.C. 615, 54 S.E. 453 (1906). However, the question of whether or not a use of water is a "reasonable use" in view of the rights of other riparian owners is a question of fact. *Id.*

PINE KNOLL ASSN. v. CARDON

[126 N.C. App. 155 (1997)]

(whether the upper riparian proprietor is engaged in a reasonable exercise of his right to use the stream is a question for the jury); *see also* 65 C.J.S. *Navigable Waters* § 66 (1966). Because the question of "reasonable use" is material to a determination of the controversy, we conclude that summary judgment was inappropriate on the riparian rights issue.

### III.

**[4]** Plaintiff contends the trial court erred in granting defendant's motion for summary judgment on the issue of whether defendant violated the restrictive covenants. The issue, however, is moot. In its complaint, plaintiff alleged that defendant violated the restrictive covenants by mooring his boats parallel to plaintiff's sea wall. Defendant counterclaimed alleging plaintiff violated the restrictive covenants by erecting its pier. At the summary judgment hearing, plaintiff submitted to a voluntary dismissal as to its claim alleging defendant's violation of the restrictive covenants. Once a party voluntarily dismisses its action pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) (1990), "it [is] as if the suit had never been filed." *Tompkins v. Log Systems, Inc.*, 96 N.C. App. 333, 335, 385 S.E.2d 545, 547 (1989), *disc. review denied*, 326 N.C. 366, 389 S.E.2d 819 (1990). The trial court granted defendant's motion for summary judgment, dismissing plaintiff's case, but did not grant defendant any injunctive relief as to his counterclaim alleging plaintiff's violation of the restrictive covenants. Therefore, because plaintiff voluntarily dismissed its claim for defendant's alleged violation of restrictive covenants, and the trial court granted defendant no relief upon his counterclaim, plaintiff's assignment of error directed to the entry of summary judgment in favor of defendant on the issue of restrictive covenant violations is moot, and we need not consider it. *See Doe v. Duke Univ.*, 118 N.C. App. 406, 455 S.E.2d 470 (1995).

In conclusion, summary judgment in favor of defendant is affirmed as to plaintiff's trespass and restrictive covenant claim; otherwise summary judgment is reversed and the cause remanded for further proceedings to determine the extent of the parties' riparian rights consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Judges GREENE and WYNN concur.